This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Larry Johnson, appeals from the judgment of conviction and sentencing entered in the Summit County Court of Common Pleas, on charges of assaulting an officer and escape. This Court affirms in part and reverses in part.
 I.
At 6:15 p.m. on May 11, 2000, Officer Thomas Woodill of the Akron Police Department was called to investigate a suspicious male at a residence located at 301 Ira Avenue, Akron. When Officer Woodill approached the male and inquired of his presence there, the man stated that he was leaving a note for his girlfriend. Officer Woodill believed that the man was not being honest about his identity, and the officer placed the man in the back of his cruiser. The individual jumped over the front seat of the cruiser and struggled with the officer. The man was able to get out of the cruiser. The officer attempted to spray the individual with pepper spray, but missed. The officer ordered the individual to remain on the ground, but the man ran away. A few hours later, appellant Larry Johnson was apprehended for the assault and the escape. Three neighbors, who were eyewitnesses to the struggle, identified Mr. Johnson from a photo array provided by the police.
Mr. Johnson was indicted on one count of assaulting an officer, a fourth degree felony, in violation of R.C. 2903.13(A) and (C)(3), and one count of escape, a fifth degree felony, in violation of R.C. 2921.34(A). The case proceeded to a jury trial, where the state presented the testimony of the three eyewitnesses, Officer Woodill, the several other police officers, and the police polygraph expert. The defense offered two witnesses. The first witness was a detective with the Akron Police Department, who briefly interviewed Mr. Johnson after his apprehension. The second witness was a handwriting expert from the Summit County Prosecutor's Office who testified that the handwriting on the note left at 301 Ira Avenue was not the handwriting of Mr. Johnson.
The jury returned verdicts of guilty on both charges, and Mr. Johnson was sentenced to concurrent terms of eighteen months for the assault and twelve months for escape. Mr. Johnson filed the instant appeal, assigning two errors. We have rearranged the assigned errors for ease of discussion.
 II. ASSIGNMENT OF ERROR NUMBER TWO THE CONVICTIONS OF THE TRIAL COURT SHOULD BE REVERSED BECAUSE THEY ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BECAUSE THE EVIDENCE SUPPORTING THEM WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE A CONVICTION BEYOND A REASONABLE DOUBT.
 A review of the weight of the evidence determines whether the state has met its burden of persuasion. State v. Angle (June 2, 1999), Medina App. No. 2875-M, unreported, at 7. This Court has observed that "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis sic.) State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4. Because this Court finds that the conviction was supported by the weight of the evidence, we necessarily find that there was sufficient evidence to support appellant's conviction.
 When an appellate court reviews the weight of the evidence [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. State v. Ali (Apr. 28, 1999), Summit App. No. 19119, unreported, at 9.
Officer Woodill testified that he was a police officer with the Akron Police Department, and that he was called to investigate a suspicious person on Ira Avenue on May 11, 2000. Officer Woodill identified Mr. Johnson as the individual who assaulted him that day. Officer Woodill testified that initially he asked Mr. Johnson to get into the cruiser, so that he could check Mr. Johnson's identity. Mr. Johnson cooperated and got into the back seat of the cruiser. Officer Woodill testified that because Mr. Johnson did not have any weapon on him and was at most under suspicion of providing false information, the officer did not close the "cage" window between the front and rear seat of the cruiser. Officer Woodill testified that Mr. Johnson climbed through the open "cage" window from the back seat of the cruiser into the front seat and struggled with the officer. The officer testified that he suffered only a few scratches, but that he believed Mr. Johnson intended to inflict harm on him. In the course of the struggle, Mr. Johnson was able to open the passenger door and get out. The officer and another eyewitness testified that Officer Woodill ordered Mr. Johnson to stay on the ground. The officer aimed his mace can at the assailant. Officer Woodill testified that he now had Mr. Johnson in detention for the assault that had just occurred. Notwithstanding the officer's order to stay on the ground, Mr. Johnson fled through the backyards of the neighboring homes, and escaped.
Two of the three eyewitnesses also saw the struggle between Mr. Johnson and the officer. All three eyewitnesses immediately picked Mr. Johnson's photo from a photo array provided by the police and at trial each eyewitness identified Mr. Johnson as the assailant.
In order to secure a conviction on the charge of assaulting an officer, the prosecution was required to prove beyond a reasonable doubt that Johnson (1) knowingly (2) caused or attempted to cause physical harm (3) to Officer Woodill, (4) who is a peace officer performing his official duties. See R.C. 2903.13(A) and (C)(3). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Physical harm means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). This evidence recited above, if believed, is legally sufficient to support a conviction for assault on Officer Woodill. SeeState v. Thompkins (1997), 78 Ohio St.3d 380, 390.
In order to secure a conviction on the charge of escape, the prosecution was required to prove beyond a reasonable doubt that Johnson (1) knowing he was under detention or being reckless in that regard, (2) purposely broke or attempted to break the detention. See R.C.2921.34(A)(1). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C). The evidence presented by the prosecution, if believed, was sufficient to support a conviction on the escape charge.
Mr. Johnson's defense was essentially that of mistaken identity and tests the weight of the evidence. Mr. Johnson's challenge is based on three alleged conflicts in the evidence: the absence of mace on Mr. Johnson when he was apprehended; the fact that the note left at 301 Ira Avenue was not written by Mr. Johnson; and discrepancies between the physical descriptions of the assailant and Mr. Johnson's physical characteristics.
The first alleged conflict arises because Officer Woodill testified that he sprayed at the assailant twice, but Mr. Johnson was apprehended without any evidence of mace on his person. However, the actual evidence established that the officer sprayed at the assailant twice. The first spray missed entirely, and the assailant protected himself against the second spray by shielding his eyes with his shirt, which came off during the struggle. Mr. Johnson was apprehended wearing a shirt of a different color than that worn by the assailant. Detective Washington Lacy III of the Akron Police Department testified that he interviewed Mr. Johnson very briefly after the arrest. Detective Lacy testified only that he didn't detect the usual odor of mace on Mr. Johnson, and that Mr. Johnson's eyes were not bloodshot, as might be expected if he was sprayed in the eyes with mace. However, Detective Lacy testified that Mr. Johnson could have changed his clothes after the escape, and Officer Woodill testified that the assailant shielded his eyes from the mace spray.
Second, Mr. Johnson points out that the assailant was initially seen rummaging through mailboxes at 301 Ira Avenue. When Officer Woodill questioned the individual, he stated that he had written a note to his girlfriend Dot, and put it in the mailbox. The officer retrieved a brief note to "Dot" from "William." Later testimony from a handwriting expert established that Mr. Johnson did not author the note. Mr. Johnson points to this testimony as evidence that the police apprehended the wrong man. However, at trial the officer testified that he never believed the individual authored the note. The individual identified himself as Roy Lee Brann, a fictitious name, and stated that his nickname was "William." Officer Woodill testified that he suspected all along that the individual actually had seen the note while rummaging through the mailboxes and used the note as his excuse for being on the premises.
Finally, Mr. Johnson challenges the credibility of the witnesses. Several of the witnesses estimated that the suspect weighed 195 pounds. Defense counsel asserted that Mr. Johnson weighed 225 pounds. Defense counsel did not offer any evidence to support the allegation that Mr. Johnson on the day in question weighed thirty pounds more than the estimates of the assailant's weight. Defense counsel also questioned the accuracy of the eyewitness reports, because one witness could not testify about what clothing the suspect was wearing at the time of the assault. The three neighbors and Officer Woodill immediately identified Mr. Johnson from photographs as the assailant. Matters of credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
This court cannot conclude that the jury clearly lost its way in resolving conflicts in the evidence, resulting in a miscarriage of justice requiring a new trial on either the charge of assault or the charge of escape.
Mr. Johnson's second assignment of error is not well-taken as to either crime charged, and it is overruled.
 III. ASSIGNMENT OF ERROR NUMBER ONE THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO THE MAXIMUM TERM OF IMPRISONMENT.
 The trial court sentenced Mr. Johnson to the maximum term of imprisonment on both the assault and the escape charge.[1] See R.C. 2929.14(A)(4) and (5). The state has conceded in its brief that the court did not make any findings on the record to justify the imposition of maximum sentences for these offenses.
The statutory scheme imposed by the General Assembly in Senate Bill 2, effective July 1, 1996, embodies a presumption of a minimum sentence for a first time offender, and a presumption of a less than the maximum sentence for other offenders. See R.C. 2929.14(B) and (C). The Ohio Supreme Court in State v. Edmonson (1999), 86 Ohio St.3d 324, determined that the trial court must make explicit statutory findings to justify a deviation from that presumption. Id. at 328. This court has held that either at the sentencing hearing or in the journal entry of conviction and sentencing, the trial court must make certain findings pursuant to R.C. 2929.14(C), that the instant crime was the worst form of the offense, that the defendant posed the greatest likelihood of recidivism, that the defendant was a major drug offender, or that the defendant was a repeat violent offender. State v. Roberts (Mar. 14, 2001), Summit App. No. 20266, unreported, at 3-4.
In the instant case, the trial court did not make such findings either on the record at the sentencing hearing or in the journal entry sentencing Mr. Johnson. Consequently, we find Mr. Johnson's first assignment of error well-taken and we sustain it.
 IV.
We have overruled Mr. Johnson's challenge to his conviction. However, we have sustained his assignment of error challenging the sentence imposed. We remand the cause to the trial court to (1) correct the discrepant statements that Mr. Johnson was and was not sentenced on the assault charge and (2) make the findings necessary to justify the sentence imposed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed equally to both parties.
Exceptions.
______________________________________ WILLIAM G. BATCHELDER
SLABY, J. CARR, J. CONCUR.
[1] The judgment entry both states that the court sentenced Mr. Johnson to eighteen months for the assault, and that "the Court declines to sentence the Defendant on the charge of ASSAULT, as contained in Count Two (2) of the Indictment." The charge of assault was found in Count One of the Indictment.